SHAW, Banking Com'r, v. BORCHERS. *

No. 9448.

Court of Civil Appeals of Texas. Galveston.

July 3, 1930.

Rehearing Denied Oct. 2, 1930.

Spencer, Rogers & Lewis, of San Antonio, for plaintiff in error.

J. W. Ragsdale, of Victoria, for defendant in error.

GRAVES, J.

Through this writ of error the banking commissioner, as such, plaintiff below, protests against the declination of the trial court to give him judgment on a $5,000 note against William Borchers, defendant there; the considerations upon which the refusal was based being thus stated by the learned judge of that court in these findings and conclusions:

"Finding of Facts by the Court.

"First. The plaintiff herein is James Shaw, Banking Commissioner of Texas, and he is seeking recovery in his official capacity as such Banking Commissioner of Texas, against the defendant, William Borchers, on a note executed on the 30th day of March,

*Writ of error granted.

1928, by the defendant, in the sum of Five Thousand and no/100 ($5,000.00) Dollars, and due and payable to The Yoakum State Bank of Yoakum, Texas, a banking corporation duly incorporated under the laws of the State of Texas, on the 30th day of September, 1928.

"Second. That prior to the filing of this suit, the plaintiff, acting in his official capacity, took charge of The Yoakum State Bank over the protest and objections of its officers and directors, and, since that time, plaintiff has been liquidating said bank and this suit is filed by said Shaw for the purpose of aiding the liquidation of said bank.

"Third. I find that some time after taking charge of said bank, plaintiff, acting through his liquidating agents, made a demand in writing of defendant that he pay his indebtedness to plaintiff, listing several items of defendant's indebtedness to said bank, including the note here declared on by plaintiff. That defendant acknowledged the correctness of all the items so presented to him as his obligations to said bank except the note here sued on; but on that note he disclaimed any liability to said bank.

"Fourth. I find that the defendant had executed a note in the sum of Five Thousand and no/100 ($5,000.00) Dollars made payable to Yoakum State Bank, and delivered same to Yoakum State Bank upon an express agreement with said bank that said note was to be held by said bank until Five Thousand and no/100 ($5,000.00) Dollars worth of stock was issued and delivered to defendant by the Bankers' Finance Corporation of South Texas, and that said note so delivered to said bank was not to become a demand against him, nor would it be used by said bank until such stock in said organization was actually delivered to defendant.

"Fifth. I find that the defendant made several demands for the issuance of such stock to him and that none was ever issued. The demand for issuance of said stock being made to those authorized to issue the same.

"Sixth. I find that at and prior to the time the note sued on was delivered to The Yoakum State Bank, that said bank was being frequently examined by plaintiff through his staff of bank examiners and past due notes were required by plaintiff to be charged off; and The Yoakum State Bank was required to put up some Four Hundred Fifteen Thousand and no/100 ($415,000.00) Dollars in cash, or else be closed by plaintiff. That said bank acting through its officers and stockholders, actually put up Four Hundred Fifteen Thousand and no/100 ($415,000.00) Dollars in cash to comply with plaintiff's demand. In this connection, I find that at about this time the defendant made a demand of The Yoakum State Bank that it surrender to him the note he had executed and delivered to Yoakum State Bank, which was not to become a demand in favor of said bank until contingencies hereinabove set out had happened. That, at that time, said The Yoakum State Bank, acting through its vice-president, M. C. Driscoll, told defendant of its difficulties with this plaintiff in having to charge off past due paper and put new money in said bank, etc., in lieu thereof, and requested the defendant, as an accommodation to said bank, to renew the note theretofore given Yoakum State Bank, as hereinabove found by me; and said Driscoll, active vice-president of said bank, and B. H. Treybig, Cashier and Director of said The Yoakum State Bank, agreed with defendant that if he, defendant, would renew said note in the sum of Five Thousand and no/100 ($5,000.00) Dollars to its present maturity date, that The Yoakum State Bank would hold said note, would not use it, nor would same become a demand in its favor against defendant, unless said stock in said Bankers' Finance Corporation was issued and delivered to defendant at or before maturity of said note, and that, upon a failure to deliver said stock, said bank would voluntarily cancel and return to defendant said note. That no such stock in said corporation was ever issued to defendant.

"Seventh. I find that the defendant at no time received anything of value for the execution of said note.

### "Conclusions of Law.

"From the foregoing facts, I conclude, as a matter of law, that the note sued on was in fact an accommodation note given to said bank for the purpose of assisting it temporarily and that no real consideration ever passed to defendant; and that the bank, acting through its Vice-President, M. C. Driscoll and its Cashier and Director, B. H. Treybig, having agreed with defendant that said note was not an obligation of his at the time same was signed and delivered to it, and that same would be returned to defendant at maturity unless certain stock in the Bankers' Finance Corporation of South Texas had prior or thereto been delivered to him, which was not done, that plaintiff is not entitled to recover anything from defendant."

The litigants will be referred to as in the trial court, rather than as designated in the appellate record.

■■ The defendant files in this court his plea for the abatement and dismissal of the appeal, based in material substance upon this alleged state of facts: That, after this appeal to this court had been perfected, the plaintiff herein in his same capacity sued a surety company, the Standard Accident Insurance Company, in the United States District Court at Victoria, Tex., upon a fidelity bond it had given the Yoakum State Bank insuring the official faithfulness of its president, vice president, and cashier, respectively, in the penal sum, each of $10,000, making

all of them parties, and charging that among and between them these officers had through their infidelity to it in effect "filched" from the bank a total sum of $118,861.33, inclusive of $5,000 on account of this William Borchers note, which they had passed to its "bills receivable" account and individually appropriated the amount thereof in cash, although it was not a demand in favor of the bank, wherefore the surety company had become obligated to him for all the several penalties because of such losses; that thereafter it was agreed in writing between himself and the other parties to that suit that he was to have judgment against the surety company for $16,625 in full satisfaction of all his asserted claim therein, which specifically enumerated the William Borchers $5,000 note herein also sued upon; that therefore "the appellant is by his agreed judgment precluded from recovering against this appellee on an action which he asserts is a valid and subsisting obligation due him by appellee, after he has recovered from the Surety Company, by his agreement with it, a monied judgment occasioned and brought about because said note was not a valid and subsisting obligation due by appellee to said bank, but because said officers, Welhausen, Driscoll and Treybig, had taken advantage of their custody of said note and used it as a means of 'filching funds' from said bank by their *alleged rascality*."

The motion to dismiss, taken for consideration with the cause itself, should, we think, be overruled upon the conclusion that any relief to which the defendant may be entitled upon the facts alleged in the plea of abatement, if now available to him, can only be obtained by an original and direct attack on the judgment because of them in the court below; in the absence of any such action, the matter cannot be raised and tried out for the first time in this appellate tribunal, which is bound by the state of the present record before it, and there being no showing, even from the face of the plea, that the questions presented to this court for its determination have become moot since the trial below, its recitations evidencing on the contrary that the plaintiff here was to get from the insurance company in the federal court suit, to which defendant William Borchers was not a party, only about 14 per cent. of what he sued for, with no proportionate allocation of that to the several different items of the aggregate loss appearing.

■ While making no attack upon the quoted fact findings, which in consequence stand here as being supported by the evidence, the banking commissioner presents in this court these four propositions:

"First: One who executes a note to a bank in furtherance of a scheme to deceive the Banking Commissioner and the bank examiners will not be permitted, after the bank has passed into the hands of the Banking Commissioner for purposes of liquidation, to set up in defense of his liability thereon an agreement that he should not be held liable.

"Second: A promissory note executed to a bank for the purpose of relieving the officers of their liability and responsibility to restore assets criticized by the bank examiner and the Banking Commissioner, and to keep the bank from being closed by the bank examiner and the Banking Commissioner, the forbearance of the bank examiner and the Banking Commissioner in not closing the bank, and the continued dealing with the bank by creditors and depositors, furnishes a good and valuable consideration for such note, and when such proof is undisputed, a plea of failure of consideration must fail.

"Third: When a witness in a civil case claims immunity from testifying, on the ground that he is under indictment in connection with matters arising out of a civil suit, and on the ground that it would jeopardize his interest to testify, the plaintiff, who offers the witness, is entitled as a matter of law to examine the witness touching his motives for refusing to testify.

"Fourth: Where a defendant is sued on a promissory note and files a sworn pleading to the effect that the note was not to be binding upon him until such time as stock was issued to him in the Bankers' Finance Corporation, and if said stock was not so issued the note sued on would not be binding and would not be effective, and that the same would thereupon be cancelled and returned to him, and in addition to this pleads that the note delivered under the above circumstances was renewed, such renewal being executed because the officers of the bank, who held the note, represented to him that the bank was being constantly examined by bank examiners, and the officers and directors were being required to put up money to take out bad paper and had put up some $415,000.00, and that he executed the note to relieve them of the obligation to put money in the bank in lieu of the note, such pleading is subject to general demurrer."

■■ None of these presentments, we conclude, should be sustained; the first two of them proceed upon the unjustified assumption—in direct contravention of the unassailed fact findings below to the contrary—that the defendant executed the $5,000 note involved, not only in furtherance of a scheme to defraud the banking commissioner and examiners, but also to enable the bank's officers to evade their duty of complying with the demands of those state officials as to restoring criticized assets, whereas the court determined, that, when he came to make the renewal that is here sued on, the pre-existing note was not then an asset of the bank, nor an enforceable obligation in its favor, because the contingency on which alone it was to become such, that is, the delivery of cer-

tain stock in the Bankers' Finance Corporation of South Texas, had not happened, and that the renewal was likewise accepted from him upon the same conditions and stipulations as to its not becoming an enforceable obligation against him until the bank, which in the meantime had reorganized and changed its name from Yoakum State Bank to The Yoakum State Bank, should deliver such stock to him; nothing else, it seems to us, can consistently be made either out of the court's copied findings, or out of the defendant's answer, this paragraph from which alone reflects that the giving of the renewal note was to permit its use by the reorganized bank under identically the same conditions as its predecessor had been carrying the original one, and for the purpose, not of furthering any scheme to defraud, or of bringing about the evasion of official duty, but of extending the time within which the finance corporation stock might yet be procured and delivered to the defendant:

"* * * And that it would be a great accommodation to said The Yoakum State Bank for defendant to renew said note to its maturity date and deliver said note to said The Yoakum State Bank, with the express agreement and understanding with said bank that said note was not and would not become an obligation of defendant to said The Yoakum State Bank, nor would it be used by said bank, but that at maturity it would be cancelled and delivered by said bank to this defendant, unless, of course, ·said Bankers' Finance Corporation stock could be and would be delivered to defendant, in which event said note would become a valid demand against defendant. That said Bankers' Finance Corporation of South Texas has never issued and delivered such stock to this defendant."

Under this supporting pleading and the findings referred to, this note was plainly nothing but accommodation paper, given in good faith without consideration flowing to its maker, hence could be defended against on that ground by him in this action by the banking commissioner, who as mere liquidating agent in charge of the bank stood in no different position toward him than it would have done if bringing the suit direct. Chicago, etc., Co. v. Brady, 165 Mo. 197, 65 S. W. 303; 7 Cyc. at pages 725–726, with cited authorities; Central Bank & Trust Co. v. Ford (Tex. Civ. App.) 152 S. W. 700; Fourth Street Nat. Bank v. Yardley, 165 U. S. page 653, 17 S. Ct. 439, 41 L. Ed. 855; Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059;

Rankin v. Bank, 208 U. S. 541, 28 S. Ct. 346, 52 L. Ed. 610.

■ If it had been shown here that this renewal note had by conspiracy to that end between the defendant and the bank been put in there to deceive the banking commissioner or those dealing with the institution, or that such result had been the sole purpose of its execution and delivery, the authorities relied upon by the plaintiff in this connection would have been in point; but the facts and findings negativing instead of indicating any such objective, under the authorities we have cited, supra, the mere fact that this defendant may have then known that his purely accommodation note, while still held by the bank without negotiation subject to the conditional agreement affecting it between them, might have the effect of swelling the apparent assets of the bank, would neither supply a consideration for it, nor preclude him as being party to a fraudulent transaction from enforcing the terms of that agreement.

■ Furthermore, the evidence wholly fails to show either that any creditors or depositors dealt with the bank on account of the presence among its papers of this note, or that the bank would have had to close but for its renewal at the time that occurred; on the contrary, it presumably at least appears that at that very time the plaintiff had already required the bank to put up the $415,000 in cash that he declares upon, wherefore the inference is not unreasonable that no material impairment of its resources resulted from the renewal rather than the charging off of this paper at the time.

■ Neither the third proposition, supra, nor its underlying assignment, presents anything for review here, because the supporting bill of exception does not show what the plaintiff expected to prove by the witness Driscoll.

■ The record fails to reflect any supporting assignment of error for the fourth and last proposition, as above quoted, nor even that a demurrer of either sort was ever addressed to the defendant's answer in the trial court; obviously this presentment is a mere abstraction.

■ If the question were required to be considered, however, we should be compelled to hold the answer not subject to a general demurrer.

These conclusions require an affirmance of the trial court's judgment; that order will be entered.

Affirmed.